IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Case No. |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| KATHERINE E. GILBERT, and | ) | |
| CHECKS AND BALANCES, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**COMPLAINT FOR PERMANENT INJUNCTION AND OTHER RELIEF**

The plaintiff United States of America brings this action at the request of the Chief

Counsel of the Internal Revenue Service ("IRS"), a delegate of the Secretary of the Treasury, and

at the direction of a delegate of the Attorney General of the United States, for a permanent

injunction, pursuant to 26 U.S.C. §§ 7402, 7407 and 7408, barring the defendants from preparing

federal tax returns and from engaging in conduct subject to penalty under the Internal Revenue

Code (26 U.S.C) (the "Code" or "IRC").

**Jurisdiction and Venue**

1. Jurisdiction exists under 28 U.S.C. §§ 1340 and 1345, and 26 U.S.C. §§ 7402(a), 7407

and 7408.

2. Venue is proper in this Court under 28 U.S.C. § 1391 because the defendant Katherine

E. Gilbert ("Gilbert") currently resides in and does business within this judicial district, and a

substantial portion of the events giving rise to this action took place in this judicial district.

3. Checks and Balances' principal place of business is 444 North Michigan Avenue, Suite

1470, Chicago, Illinois 60611. Prior to 2013, Checks and Balances was located at 500 N.

Michigan Avenue in Chicago, Illinois.

4. Gilbert, either in her individual capacity or doing business as Checks and Balances, Inc. ("Checks and Balances"), is conducting business within this judicial district.

**The Defendants**

5. Checks and Balances, Inc. is a corporation organized under the laws of Illinois.

6. Gilbert is a paid tax return preparer who prepares and files federal income tax returns for customers, of whom about eighty percent reside in the Chicago area. The remaining twenty percent reside out of state. Gilbert has been preparing tax returns in the Chicago area since at least 1984.

7. Gilbert earned a Bachelor of Science degree in accounting in 1984.

8. Gilbert has been an Enrolled Agent with the Internal Revenue Service since 2002. An Enrolled Agent is a person who may represent taxpayers before the Internal Revenue Service. Enrolled agents must pass a two-day Enrolled Agent exam administered by the IRS and must complete continuing education courses.

9. Gilbert holds herself out as a knowledgeable and experienced tax return preparer.

10. Gilbert has been operating Checks and Balances, including preparing and filing federal income tax returns for others, from 1984 until the present time.

11. Gilbert is the owner, president and sole tax return preparer at Checks and Balances, Inc. Checks and Balances employs two clerical staff members who are responsible for data entry and bookkeeping, but who do not act as tax return preparers.

12. On information and belief, about 75 percent of Checks and Balances' business income is derived from tax preparation, and the remainder is derived from bookkeeping, payroll and incorporations, and other business services.

13.  Customers pay Gilbert between $150 and $1,000 for return preparation depending on the complexity of the return.  On information and belief, Gilbert receives at least $3,000 per month in compensation for her services from Checks and Balances.

14.  On information and belief, Gilbert does not advertise her services, but obtains most of her business through word-of-mouth referrals from current customers.  She obtains about 100 new customers a year.

15.  Since January 1, 2012, IRS regulations have required any tax return preparer who anticipates preparing and filing 11 or more Forms 1040, 1040A, 1040EZ and 1041 (collectively, "Forms 1040") during a calendar year to obtain an EFIN ("Electronic Filing Identification Number") and use IRS e-file. The IRS assigns an EFIN to firms that have completed an application process and have passed a suitability check to become an authorized IRS e-file provider able to file tax returns electronically.

16.  The IRS assigned Checks and Balances an EFIN on October 12, 2007.  Gilbert is listed as the primary contact and responsible official on the EFIN application.

17.  The IRS assigns every return preparer a Preparer Tax Identification Number ("PTIN"), which is a unique identification number that must be affixed to every return the preparer files.  The IRS assigned Gilbert a PTIN on November 16, 2010.

18.   Gilbert sometimes affixes her PTIN to the tax returns she files.  At other times she affixes her social security number or the Employer Identification Number ("EIN") assigned to Checks and Balances. As of October 18, 2016, Gilbert has prepared and filed tax returns for processing years 2011 through 2016, as set forth below:

| Katherine Gilbert, returns filed by SSN, PTIN or Checks and Balances, Inc.'s assigned EFIN or EIN xx-xxx2413 | | | |
|---|---|---|---|
| Processing Year | Individuals, Forms 1040 | Corporate, Forms 1120 | Partnership, Forms 1065 |
| 2011 | 524 | 64 | 54 |
| 2012 | 606 | 79 | 48 |
| 2013 | 604 | 73 | 74 |
| 2014 | 574 | 72 | 50 |
| 2015 | 515 | 72 | 49 |
| 2016 | 522 | 78 | 62 |

**IRS Investigations into Gilbert's Tax Preparation Activities**

19. On May 8, 2014, the IRS advised Gilbert that it had opened a civil investigation into her return preparation activities.

20. On June 5, 2014, the IRS interviewed Gilbert, in the presence of her personal representative, about her tax return preparation activities.

21. The IRS examined 51 federal income tax returns for 2010 -2013 prepared by Gilbert, and interviewed many of the customers whose returns were audited. All of the 51 returns audited required adjustments, with collective underreporting of $643,189, and an average deficiency of $12,612 per return.

22.  In addition to examining 51 returns prepared by Gilbert, IRS representatives interviewed 8 taxpayers regarding their tax returns prepared by Gilbert for 2011, 2012, and 2013, and 8 taxpayers regarding their tax returns prepared by Gilbert for 2016.  Of the 8 returns reviewed for 2016, six contained inaccuracies that revealed total tax underpayments of $14,000.

23.   Gilbert has taken active steps to impede the IRS's civil investigation.  Gilbert has instructed customers not to cooperate with the IRS investigators, encouraged customers to

4

decline to be interviewed by the IRS, and impeded IRS investigators by offering the blanket response that all numbers contained in the returns she filed were based solely on information her clients provided to her.

24.     The IRS determined that Gilbert engaged in a pattern and practice of violating the federal tax laws through her abusive return preparation activities, including: (1) fabricated employee expense deductions on Schedules A; (2) false Schedules C with inflated or entirely fraudulent losses designed to reduce taxable income from non-business activity, and in at least one instance, a return which listed a fictitious business entity; (3) improper business deductions for clients' personal vehicles or fabricated purchases of unidentified assets which would then be used as the basis for a deduction; (4) fabricated Schedule E rental activity; and (5) Schedule E flow-through losses from putative partnerships that did not exist and that never filed a Schedule K-1.  These frivolous and fraudulent claims have resulted in understated tax liabilities on her customers' tax returns and in some instances bogus income tax refunds that were paid to her clients.

25.  Gilbert utilizes these schemes in furtherance of her fraudulent preparation business strategy by taking advantage of the fact that most self-employment income (reported on Schedule C), employee business expenses (reported on Schedule A), and rental income (reported on Schedule E) are self-reported and not subject to independent verification from third-party information reports.  Accordingly, the IRS can verify the numbers reported on Schedules C and E only by conducting an examination.

26.  Gilbert was still preparing and filing fraudulent federal income tax returns on behalf of her customers claiming false deductions, bogus expenses and illegal deductions post-2014, even though Gilbert was aware that: (a) her customers were being audited by the IRS; and (b)

she was under investigation by the IRS and had been interviewed by the IRS on June 5, 2014.

### Gilbert's Fraudulent Tax Preparation Activities

27. The goal of Gilbert's tax-fraud activities is to significantly underreport the tax liabilities of her customers and, as a result, for Gilbert to profit from preparing and filing fraudulent income tax returns by charging fees for her services.

28. To carry out her tax-fraud schemes, Gilbert often prepares her customers' returns by including a fraudulent Schedule C, showing inflated or entirely fraudulent losses, in order to offset income on the taxpayer's Form 1040. Gilbert completely fabricates expenses purportedly incurred by her customers' purported businesses which often do not exist, either because the customer does not engage in the activity at all or because the activity is a hobby and not a profit seeking venture. If the customer does in fact own a business, the business related expenses are entirely fabricated by Gilbert, or grossly overstated.

29. By fraudulently inflating Schedule C expenses, the returns prepared by Gilbert purport to show that her customers have business expenses that offset earned income and the customer is therefore entitled to a refund of income taxes previously withheld and paid to the IRS.

30. Gilbert also commonly prepares tax returns that include false Schedule A itemized deductions. Schedule A is used by taxpayers who itemize deductions rather than use the standard deduction from adjusted gross income. Gilbert routinely reports charitable contributions that are inflated or fabricated. Gilbert has also falsified or inflated education expenses and itemized deductions for customer medical and dental expenses, and listed false unreimbursed employee business expenses.

31. By creating false Schedule A deductions, Gilbert is able to offset her customers'

earned income to fraudulently obtain a refund of taxes previously withheld and paid to the IRS.

32. For other customers, Gilbert has created false Schedule E expenses from rental real estate in order to create significant deductions to taxable income. Schedule E is used to report income or loss from, among other things, rental real estate.

33. To prevent her customers from discovering her tax-fraud schemes, Gilbert often submits returns that have not been reviewed or signed by her customers, in violation of 26 U.S.C. § 6695(b)(1)(C).

**CUSTOMER 1**

34. CUSTOMER 1 is employed as a registered nurse for a large national health-care provider, and works part-time for 2 additional health-care agencies. Each of her employers issues a W-2 for wages. CUSTOMER 1 cares for patients in their homes, which requires her to drive approximately 35 miles per day. CUSTOMER 1's filing status is single. CUSTOMER 1 was referred to Gilbert's return preparation business by a friend.

35. Gilbert prepared and filed CUSTOMER 1's 2011 income tax return as a paid return preparer.

36. Gilbert created and filed a false Schedule C with CUSTOMER 1's 2011 tax return reflecting a sole proprietorship named "RN." Gilbert reported receipts and expenditures as if CUSTOMER 1 was self-employed as a registered nurse.

37. CUSTOMER 1 was not self-employed and never informed Gilbert that she was a self-employed registered nurse.

38. The Schedule C prepared and filed by Gilbert claimed mileage driven in CUSTOMER 1's personal vehicle. However, CUSTOMER 1 did not maintain a mileage log or provide Gilbert with a mileage log that could substantiate such a deduction, and the mileage was

not a deductible expense of any sole proprietorship. In fact, CUSTOMER 1 told Gilbert that her

employers reimburse her for all business expenses, including mileage.

39. The Schedule C prepared by Gilbert falsely reported that CUSTOMER 1's new

vehicle purchased in 2011 was a depreciable asset that CUSTOMER 1 used for her alleged self-

employment. However, although CUSTOMER 1 purchased a new car in 2011, she never told

Gilbert that it was for a business. CUSTOMER 1 never provided Gilbert with an invoice for the

purchase of a new car in 2011 and did not purchase a vehicle for any sole proprietorship.

40. The Schedule C prepared by Gilbert also reported $1,200 in fabricated gross receipts,

and reported additional false business expenses including supplies, and deductible meals and

entertainment allegedly attributable to CUSTOMER 1's alleged self-employment. This fictitious

business activity resulted in the Schedule C reflecting a net loss of $28,306, which reduced

CUSTOMER 1's income tax liability for 2011. CUSTOMER 1 never provided records to

support the receipts and expenses reported on the Schedule C created by Gilbert.

41. Gilbert also submitted a false Schedule A with CUSTOMER 1's 2011 income tax

return. The Schedule A reported $5,500 in non-cash charitable contributions that CUSTOMER 1

did not, in fact, make during 2011. CUSTOMER 1 did not tell Gilbert she donated $5,500 worth

of items, and, at most, her non-cash donations totaled $100 in clothing and miscellaneous items

for the entire year. CUSTOMER 1 never provided Gilbert with any receipts to substantiate non-

cash contributions.

42. Gilbert met with CUSTOMER 1 in preparation to file CUSTOMER 1's 2011 tax

return, but Gilbert never provided CUSTOMER 1 a copy of her 2011 return to review and sign

prior to its submission to the IRS.

43. The IRS met with CUSTOMER 1 and Gilbert in the course of examining

8

CUSTOMER 1's return. Prior to the meeting, Gilbert stated to CUSTOMER 1, "don't you remember you are a self-employed nurse?" At the interview, Gilbert stated to the IRS that she "must have confused [CUSTOMER 1] with someone else when preparing the tax return for a Schedule C business."

44. Gilbert's fabricated business losses on the Schedule C and false deductions on the Schedule A understated CUSTOMER 1's taxable income by $31,501, resulting in CUSTOMER 1 receiving a larger tax refund than she was entitled to. An IRS examination of CUSTOMER 1's 2011 income tax return led to an assessment of $7,652 in additional taxes due for 2011.

**CUSTOMERS 2 and 3**

45. CUSTOMERs 2 and 3 are married taxpayers who filed their income tax returns under the status "married filing jointly." The husband is self-employed as a photographer, and the wife is employed as a legal assistant. Gilbert has prepared CUSTOMER 2 and 3's tax returns since 2011.

46. Gilbert prepared and filed the 2011, 2012, and 2013 joint income tax returns for CUSTOMERS 2 and 3 as a paid return preparer.

47. When preparing CUSTOMER 2 and 3's 2011 joint income tax return, Gilbert created and filed a Schedule C reporting that husband's photography business had a net loss $12,820. For CUSTOMER 2's 2012 return, Gilbert prepared a Schedule C that reported the photography business operated at a net loss of $11,838. The Schedule C Gilbert prepared for CUSTOMER 2's 2013 joint return showed that the photography business operated at a net loss of $7,144.

48. CUSTOMER 2 operated a photography business during those years and stated that he did incur some expenses, but not in the amounts reported on the return.

49. Gilbert falsely claimed a deduction for the depreciation of a Macintosh computer,

purportedly purchased for husband's photography business in 2013. However, the business did not purchase a computer in 2013. The husband had not purchased a computer for the business since 2008. CUSTOMER 3 told the IRS that she does not know where Gilbert obtained that information.

50. When preparing the 2012 tax return of CUSTOMERS 2 and 3, Gilbert misreported expenses related to CUSTOMER 2's use of a portion of their home for business purposes. Gilbert improperly deducted CUSTOMER 2 and 3's mortgage payment as a rental expense on Schedule C. Gilbert also deducted the entire mortgage interest payment on Schedule A, even though she had already reported the full mortgage payment as a rental expense. The Schedule C expenses related to CUSTOMER 2's use of his home as a business should have been calculated using Form 8829 (Expenses for Business Use of Your Home). The Schedule A home mortgage interest should have been reduced by the mortgage interest calculated using Form 8829 and reported on Schedule C.

51. Gilbert also fabricated Schedule C business expenses in the form of mileage, parking, and toll costs purportedly incurred by CUSTOMER 2 and 3's business usage of their personal vehicle. With regard to the reported car expenses, CUSTOMER 3 (wife) does not know where the number of miles came from on the returns, and stated that the miles reported on the return was "absurd."

52. Gilbert claimed $3,570 of car and truck expenses on CUSTOMER 2 and 3's 2011 tax return and $6,300 on CUSTOMER 2 and 3's 2012 tax return. CUSTOMER 2 did not maintain a mileage log, and CUSTOMER 2 did not provide any toll or parking receipts to Gilbert to substantiate the information on the Schedule C forms.

53. Gilbert also inflated the costs of goods reported as deductible expenses on Schedule

C of CUSTOMER 2 and 3's 2012 and 2013 income tax returns.  Gilbert claimed as the cost of

goods sold $3,606 for 2012 and $1,575 for 2013.  At the IRS examination of CUSTOMER 2,

Gilbert stated that the cost of goods sold reflected film costs incurred in connection with the

husband's photography business.  However, the husband did not incur any business costs for the

purchase of film because he shoots photographs digitally.  CUSTOMER 2 did not provide

Gilbert any receipts to substantiate the costs of goods listed on Schedule C, and CUSTOMER 2's

business costs were limited to ink, paper, and discs in the amount of no more than $500 per year.

54.  The actual records provided to Gilbert did not substantiate the business expenses

listed on CUSTOMER 2 and 3's 2012 and 2013 Schedules C.

55.  Gilbert also prepared Schedule A for CUSTOMER 2 and 3's 2011, 2012, and 2013

joint income tax returns which claimed cash charitable contributions in the amounts of $3,275,

$4,250, and $2,650, respectively.  The charitable contributions reported by Gilbert were false.

CUSTOMER 2 stated that they did not give the amounts reported, and that he and his wife could

not have afforded donations in those amounts. CUSTOMERS 2 and 3 did not provide receipts to

Gilbert to substantiate the amounts of charitable contributions reported by Gilbert on the returns.

56.  The IRS examination of CUSTOMER 2 and 3's 2011, 2012, and 2013 income tax

returns led to an assessment of $5,978 in additional taxes due to the IRS.

**CUSTOMERS 4 and 5**

57.  CUSTOMERS 4 and 5, of Buffalo Grove, Illinois, are married taxpayers who filed

their income tax returns under the status "married filing jointly."  Both husband and wife are

employed as general laborers.  CUSTOMERS 4 and 5 have had their tax returns prepared by

Gilbert for more than five years.  The IRS examined CUSTOMER 4 and 5's 2013 income tax

return.

58. Gilbert prepared and filed the 2013 joint income tax return for CUSTOMERS 4 and 5 as a paid return preparer.

59. Gilbert charged CUSTOMERS 4 and 5 $300 to prepare their 2013 personal income tax return.

60. Gilbert created false and inflated Schedule A expenses for medical and dental expenses without the knowledge and consent of CUSTOMERS 4 and 5. Specifically, Gilbert reported that CUSTOMER 4 incurred $13,329 in medical expenses in 2013. CUSTOMERS 4 and 5 did not submit documents that substantiated the $13,329, nor did they tell Gilbert that they incurred $13,329 in unreimbursed medical expenses in 2013. CUSTOMERS 4 and 5 incurred between $1,500 and $2,000 in unreimbursed medical expenses in 2013, and they provided Gilbert with credit card receipts and documentation of medical expenses in those amounts for the preparation of their joint return.

61. Gilbert also falsely claimed that CUSTOMERS 4 and 5 made $7,250 in Schedule A cash charitable contributions for 2013. CUSTOMERS 4 and 5 did not make charitable contributions in that amount. They did not discuss charitable contributions with Gilbert or provide her with any documentation for charitable contributions for tax year 2013. CUSTOMERS 4 and 5 estimate that they made about $50 in charitable contributions in 2013.

62. Gilbert also fabricated $7,550 in unreimbursed employee business expenses on CUSTOMER 4 and 5's Schedule A. CUSTOMER 4 and 5's 2013 tax return claimed employee expenses described as "education." However, CUSTOMERS 4 and 5 did not attend any educational institutions and did not incur education expenses in 2013. CUSTOMERS 4 and 5 did not discuss education expenses with Gilbert or provide her with any documentation for the purported unreimbursed employee expenses listed on their 2013 tax return.

63.  Gilbert also reported $2,400 in qualified education expenses on Form 8863 in order to obtain an $840 American Opportunity Credit on CUSTOMER 4 and 5's Form 1040 for 2013. However, CUSTOMERS 4 and 5 did not incur any eligible education expenses in 2013, and they did not discuss or provide Gilbert with any information regarding alleged education expenses in 2013.

64.  Gilbert's fabrications and misstatements resulted in the significant understatement of CUSTOMER 4 and 5's 2013 tax liabilities, which had the effect of reducing CUSTOMER 4 and 5's reported taxable income so that CUSTOMERS 4 and 5 obtained a $2,257 refund to which they were not entitled.

**CUSTOMERS 6 and 7**

65.  CUSTOMERS 6 and 7, of Cicero, Illinois, are married taxpayers who filed their income tax returns under the status "married filing jointly."  Husband is a general laborer and wife is a housewife.  CUSTOMERS 6 and 7 had their tax return prepared by Gilbert for three years.

66.  Gilbert prepared and filed the 2011, 2012, and 2013 joint income tax returns for CUSTOMERS 6 and 7 as a paid tax return preparer.

67.  Gilbert charged CUSTOMERS 6 and 7 between $250 and $400 to prepare their 2012 personal income tax return.

68.  Gilbert prepared and filed CUSTOMER 6 and 7's 2012 income tax return without having either of them review and sign the return.

69.  CUSTOMERS 6 and 7 have three children, including one son who is claimed as a dependent on CUSTOMER 6 and 7's return.

70.  When preparing CUSTOMER 6 and 7's 2012 income tax return, Gilbert claimed

13

qualified education expenses for the son in the amount of $2,000 on Form 8863, generating an American Opportunity Credit of $1,200 on CUSTOMER 6 and 7's Form 1040.

71. Gilbert included this education expense without the knowledge of CUSTOMERS 6 and 7. Their dependent son did not attend any schools in 2012. CUSTOMERS 6 and 7 did not discuss education expenses with Gilbert or provide Gilbert any records related to the claimed education expenses.

72. Due to this fraudulent education expense, CUSTOMERS 6 and 7 underreported their adjusted gross income for 2012, and received a tax refund to which they were not entitled.

**CUSTOMERS 8 and 9**

73. CUSTOMERS 8 and 9, of Chicago, Illinois, are married taxpayers who filed their income tax returns under the status "married filing jointly." Husband was employed as a paralegal and wife was employed as a paralegal and restaurant hostess.

74. Gilbert prepared and filed the 2011 joint income tax return for CUSTOMERS 8 and 9 as a paid tax return preparer.

75. Gilbert charged CUSTOMERS 8 and 9 $400 to prepare their 2011 personal income tax return.

76. Gilbert prepared and filed CUSTOMER 8 and 9's 2011 income tax return without having CUSTOMERS 8 and 9 review and sign the return. Gilbert also sought and obtained an extension to file CUSTOMER 8 and 9's 2011 tax return without CUSTOMER 8 and 9's knowledge or permission.

77. When preparing CUSTOMER 8 and 9's 2011 income tax return, Gilbert claimed qualified education expenses in the amount of $4,000 on Form 8863, generating an American Opportunity Credit of $1,500 on CUSTOMER 8 and 9's Form 1040.

14

78. CUSTOMER 9 was a student at a local community college in 2011 and provided Gilbert a form 1098-T to prove that she incurred $1,130 in qualified education expenses in 2011. She also incurred approximately $400 for books and supplies. CUSTOMER 9 did not tell Gilbert that she incurred $4,000 in education expenses in 2011.

79. Gilbert created false and inflated Schedule A expenses for medical and dental expenses without the knowledge and consent of CUSTOMERS 8 and 9. Specifically, Gilbert reported that CUSTOMERs 8 and 9 incurred $5,236 in medical expenses in 2011. However, CUSTOMERS 8 and 9 did not incur unreimbursed medical expenses in that amount. CUSTOMER 9 told Gilbert that she incurred expenses from dental work and for her mother's medicine, but they never discussed any specific amounts.

80. Gilbert also falsely claimed that CUSTOMERS 8 and 9 made $4,950 in Schedule A non-cash contributions for 2011. CUSTOMERS 8 and 9 did not make this amount of charitable contributions. CUSTOMER 8 and 9 donated approximately $40 in cash per week, $250 at Christmas, and $250 at Easter to their church, and reported this to Gilbert, who reported $2,600 in Schedule A cash charitable contributions, which was accurate. CUSTOMERS 8 and 9 also told Gilbert that they donated four chairs, tables, and vases to a charity. However, CUSTOMERS 8 and 9 did not tell Gilbert that they made $4,950 in non-cash contributions, and the information that Gilbert included on CUSTOMER 8 and 9's Schedule A regarding non-cash contributions was false.

81. Gilbert also fabricated $14,980 in unreimbursed employee business expenses on CUSTOMER 8 and 9's Schedule A and Form 2106. CUSTOMER 8 and 9's 2011 tax return claimed $8,380 in unspecified business expenses and $500 in deductible meals and expenses for CUSTOMER 9, and $3,600 in parking fees, tolls, and transportation and $2,500 in unspecified

15

business expenses for CUSTOMER 8. These expenses were false, and CUSTOMERS 8 and 9 did not tell Gilbert that they incurred such expenses.

82. Gilbert also fabricated Schedule C business expenses in the form of $2,400 in parking costs at CUSTOMER 9's employer's office. However, the parking costs of CUSTOMER 9 reported by Gilbert were commuting expenses that are not deductible as business expenses on Schedule C. Gilbert also claimed $1,000 in training expenses on CUSTOMER 8 and 9's 2011 tax return. CUSTOMERS 8 and 9 did not incur any such training costs, and never told Gilbert that they incurred any such expenses.

83. Due to the false and fraudulent information that Gilbert included on CUSTOMER 8 and 9's 2011 income tax return, they received a $3,716 tax refund to which they were not entitled. The IRS examination of CUSTOMER 8 and 9's 2011 income tax return led to an assessment of $4,045 in additional taxes due to the IRS.

**CUSTOMER 10 and 11**

84. CUSTOMERS 10 and 11, of Chicago, Illinois, are married taxpayers who filed their income tax returns under the status "married filing jointly." CUSTOMERS 10 and 11 were introduced to Gilbert by a co-worker. CUSTOMER 10 works at a department store, and CUSTOMER 11 works at a security services business.

85. Gilbert prepared and filed the 2011 and 2012 joint income tax returns for CUSTOMERS 10 and 11 as a paid tax return preparer.

86. Gilbert fabricated Schedule C business expenses on both the 2011 and 2012 tax returns of CUSTOMERS 10 and 11. CUSTOMER 10 is an aspiring musician and artist. He was paid for performing on six occasions in 2011. That year, CUSTOMER 10 purchased an amp, a MacBook Pro, and some smaller items such as guitar strings and paint. Gilbert prepared and filed

16

a Schedule C for a sole proprietorship purportedly named "The Band" for tax years 2011 and 2012. The 2011 Schedule C listed $500 in advertising expenses, $25,000 in depreciation, $2,500 in rent or lease for business property, and $600 in travel expenses. The 2012 Schedule C listed $15,250 in advertising expenses, $2,500 in supplies, $7,500 in travel expenses, and $2,565 in phone expenses. CUSTOMER 10 provided no information to Gilbert to substantiate these business expenses, did not tell Gilbert that he had incurred such expenses, and did not incur expenses in those amounts.

87. Due to the false and fraudulent information that Gilbert included on CUSTOMER 10 and 11's 2011 income tax return, they received a $3,388 tax refund to which they were not entitled. Due to the false and fraudulent information that Gilbert included on CUSTOMER 10 and 11's 2012 income tax return, they received a $2,276 tax refund to which they were not entitled. The IRS examination of CUSTOMER 10 and 11's 2011 and 2012 income tax returns led to an assessment of $8,870 in additional taxes due.

**CUSTOMER 12**

88. CUSTOMER 12, of Oak Forest, Illinois, is a single taxpayer who filed her income tax returns under the status "head of household." CUSTOMER 12 was introduced to Gilbert by a friend. CUSTOMER 12 is a nurse.

89. Gilbert prepared and filed the 2011 and 2012 tax returns for CUSTOMER 12 as a paid tax return preparer.

90. Gilbert fabricated $33,576 in unreimbursed employee business expenses on CUSTOMER 12's Schedule A and Form 2106 in 2011. CUSTOMER 12's 2011 tax return claimed $30,776 in vehicle expenses and $2,800 in parking fees, tolls, and transportation. CUSTOMER 12 was reimbursed by her employer for miles driven. Accordingly, CUSTOMER

12 was not entitled to a deduction for those expenses.

91.  Gilbert fabricated Schedule C business expenses on both the 2011 and 2012 tax returns of CUSTOMER 12.  Gilbert prepared and filed a Schedule C for a sole proprietorship purportedly named "Army and Travel RN" for tax years 2011 and 2012.  The 2011 Schedule C listed $33,626 in car and truck expenses.  The 2012 Schedule C listed $22,200 in car and truck expenses and $7,500 in supplies, $7,500 in travel expenses, and $2,565 in phone expenses.

92.  CUSTOMER 12 did not have a sole proprietorship in 2011 or 2012 and she never told Gilbert that she had a company named Army and Travel RN. CUSTOMER 12 provided no information to Gilbert to substantiate these business expenses, and did not tell Gilbert she had incurred such expenses.

93.  Gilbert attended the IRS examination of CUSTOMER 12.  Gilbert stated that she "must have forgotten" to delete the mileage used for the Schedule A vehicle expenses when preparing Schedule C.

94.  Due to the false and fraudulent information that Gilbert included on CUSTOMER 12's 2011 income tax return, CUSTOMER 12 received an $11,159 tax refund to which she was not entitled.  Due to the false and fraudulent information that Gilbert included on CUSTOMER 12's 2012 income tax return, she received a $9,807 tax refund to which she was not entitled.  The IRS examination of CUSTOMER 12's 2011 and 2012 income tax returns led to an assessment of $14,389 in additional taxes due.

**CUSTOMER 13**

95.  CUSTOMER 13, of Chicago, Illinois, is a single-status taxpayer.  CUSTOMER 13 is employed as a registered nurse.

96.  Gilbert prepared and filed the 2012 income tax returns for CUSTOMER 13.

97. Gilbert reported $3,988 in qualified education expenses on Form 8863 in order to obtain a $1,498 American Opportunity Credit on CUSTOMER 13's Form 1040 for 2012. However, CUSTOMER 13 was not a student in 2012 and did not incur any eligible education expenses that year. CUSTOMER 13 did not discuss or provide Gilbert with any information regarding alleged education expenses in 2012.

98. Due to this fraudulent education expense, Gilbert underreported CUSTOMER 13's adjusted gross income, and CUSTOMER 13 received a tax refund to which she was not entitled.

**CUSTOMERS 14 and 15**

99. CUSTOMERS 14 and 15, of Chicago, Illinois are married taxpayers who filed their income tax return under the status "married filing jointly." Husband is employed as a mechanic and his wife is employed as a nurse.

100. Gilbert prepared and filed the 2016 joint income tax return for CUSTOMERS 14 and 15 as a paid tax return preparer. Gilbert has prepared CUSTOMERS 14 and 15's tax returns for about 5 years.

101. Gilbert told CUSTOMERS 14 and 15 that she would only charge them $150 for the preparation of their 2016 joint return. However, Schedule A to the tax return reports that Gilbert charged CUSTOMERS 14 and 15 a tax preparation fee of $500.

102. Gilbert fabricated $6,406 in Unreimbursed Employee Business Expenses on CUSTOMER 14 and 15's Schedule A and Form 2106 in 2016. CUSTOMERS 14 and 15 did not discuss this amount with Gilbert and they do not know how the amount came to be reported on their return. CUSTOMER 14 dropped off his records to Gilbert and returned 2 weeks after the return was complete. Gilbert did not contact CUSTOMERS 14 and 15 with any questions while preparing their joint return.

103.  Due to the fraudulent Schedule A expenses, CUSTOMERS 14 and 15 underreported their adjusted gross income, and received a refund to which they were not entitled.

**CUSTOMERS 16**

104.  CUSTOMER 16, of Chicago, Illinois, is a single taxpayer who filed his return under the status "head of household." CUSTOMER 16 is employed by the City of Chicago.

105.  Gilbert prepared the 2016 individual tax return of CUSTOMER 16 as a paid preparer.

106.  Gilbert fabricated Schedule A Unreimbursed Employee Business Expenses of $2,600 on CUSTOMER 16's Schedule A for Union Dues.  However, CUSTOMER 16 stated that he did not incur union dues of $2,600 in 2016.

107.  Gilbert also fabricated Schedule C "costs of goods sold" on CUSTOMER 16's 2016 return.  Gilbert prepared and filed a Schedule C for a sole proprietorship named "Hawks Hockey Club." In 2016, CUSTOMER 16 stated that he worked as a coach for a hockey club, and was provided a 1099. Gilbert falsely reported that CUSTOMER 16 received $4,550 in gross receipts for costs of goods sold. However, CUSTOMER 16 does not recall discussing the amount with Gilbert, nor does he know what the amount reported in Schedule C reflects.

108.  Due to the fraudulent Schedules A, and C, Customer 16 underreported his adjusted gross income, and received a refund to which he was not entitled.

**CUSTOMER 17**

109.  CUSTOMER 17, of Evergreen Park, Illinois is a single taxpayer who filed his return under the status head of household. CUSTOMER 17 is employed as an Application Developer.

110.  Gilbert prepared the 2016 individual tax return of CUSTOMER 17 as a paid

preparer. Gilbert has prepared CUSTOMER 17's tax return for 12 years.

111.  Gilbert fabricated Education Expenses on CUSTOMER 17's return by reporting that he paid $4,000 in out of pocket expenses for his son's tuition. However, CUSTOMER 17 paid only $700 to $1,100 in expenses for his son's tuition, and provided a credit card statement to Gilbert showing the amount he paid.

112.  Due to the inflated Education Expenses, CUSTOMER 17 underreported his Adjusted Gross Income, and received a refund in an amount to which he was not entitled.

**CUSTOMERS 18 and 19**

113. CUSTOMERS 18 and 19, of Westchester, Illinois are married taxpayers who filed their 2016 joint tax return under the status "married filing jointly." CUSTOMERS 18 and 19 are employed as laborers.

114.  Gilbert prepared the 2016 joint tax return of CUSTOMERS 18 and 19 as a paid preparer. Gilbert has prepared CUSTOMERS 18 and 19's tax returns for over 20 years.

115.  The 2016 tax return lists an IRA distribution of $54,333 for CUSTOMER 19's (wife) early IRA distribution.  CUSTOMER 19 provided Gilbert with IRS Form 1099-R for the distribution, which stated that the distribution amount was subject to an additional tax of 10% of the amount of the withdrawal (or $5,433).  However, Gilbert failed to report the additional income tax of $5,433 when preparing the tax return.

116.  Due to the unreported additional tax, CUSTOMERS 18 and 19 underreported their Adjusted Gross Income and received a refund to which they were not entitled.

**Harm to the United States**

117.  Gilbert was aware of the IRS's investigation of her return preparation activities as early as 2014.  Nevertheless, Gilbert continued to prepare fraudulent tax returns and to attempt to

impede the IRS examinations into her customers' returns.

118.  Gilbert's fraudulent conduct has caused significant damage to the public fisc.  For the 51 tax returns that were audited for tax years 2010 through 2013, the IRS showed an actual harm to the United States of $643,189.  And the additional eight returns reviewed for tax year 2016 showed an additional harm to the United States of $14,000.  Because Gilbert prepared thousands of tax returns for tax years 2010 through 2016, the tax loss to the government from Gilbert's fraudulent conduct is estimated to be well over that amount.

119.  The United States also is harmed because the IRS must devote its limited resources to investigating Gilbert's conduct as a tax return preparer, detecting and examining inaccurate and fraudulent returns filed by Gilbert, and attempting to assess and collect unpaid taxes and penalties from her customers, some of which may not be collectible.

120.  The United States is also harmed by Gilbert's attempts to assist her customers in providing false responses to IRS interview questions in preparation for audits in which she also participates, actions that actively thwart the IRS's ability to administer the Internal Revenue Code and to identify fraudulent tax preparers.

121.   Gilbert has profited from preparing fraudulent tax returns by claiming fabricated deductions, exemptions and/or credits, and thereby reducing her customers' tax liabilities and/or increasing their refunds, essentially stealing from the U.S. Treasury.

122.  In addition to the direct monetary harm caused by preparing tax returns that understate customers' liabilities, Gilbert's illegal activities undermine public confidence in the administration of the federal tax system and encourage noncompliance with the internal revenue laws.  Gilbert's conduct results in the IRS having to devote scarce resources to identifying her customers, ascertaining their correct tax liabilities, attempting to recover any refunds erroneously

issued, and collecting any additional taxes and penalties.

123.  Gilbert's illegal conduct also causes intangible harm to honest tax return preparers, because by preparing returns that falsely or fraudulently underreport her customers' tax liabilities and inflate her customers' refunds, she gains an unfair competitive advantage over tax return preparers who do not do so and who, as a result, may have fewer customers.

**COUNT I: Injunction Under 26 U.S.C. § 7407 For Violation of 26 U.S.C. §§ 6694 and 6695**

124. The United States incorporates by reference the allegations contained in paragraphs 1 through 123.

125.  Section 7407 of the Internal Revenue Code authorizes a district court to enjoin a tax return preparer from specified misconduct (which is described in I.R.C. §§ 6694 and 6695, and I.R.C. § 7407 itself) if the court finds that the preparer has engaged in such conduct and injunctive relief is appropriate to prevent the recurrence of such conduct.  Additionally, if the court finds that a preparer has continually or repeatedly engaged in such conduct, and the court finds that a narrower injunction (i.e., prohibiting only specific enumerated conduct) would not be sufficient to prevent that person's interference with the proper administration of the internal revenue laws, the court may enjoin the person from acting as a federal tax return preparer.

126.  I.R.C. § 6694(a) provides that a tax return preparer is subject to penalty if he or she prepares a return or claim for refund understating a customer's tax liability based on: (1) a position for which there is not a realistic possibility of being sustained on the merits; (2) the preparer knew or reasonably should have known of such position; and (3) the position was not properly disclosed or was frivolous.

127.  I.R.C. § 6694(b) penalizes a tax return preparer who prepares a return or claim with an understatement of liability: (1) in a willful attempt to understate the liability for tax on the

return or claim; or (2) for a reckless or intentional disregard of internal revenue rules or regulations.

128. I.R.C. § 6695(a) penalizes a tax return preparer for failing to furnish a copy of the tax returns prepared to the taxpayer.

129. I.R.C. § 7701(a)(36) defines a "tax return preparer" as a person who prepares for compensation or who employs one or more persons to prepare for compensation, any tax return or a substantial portion thereof.

130. Gilbert is a tax return preparer within the meaning of section 7701(a)(36).

131. Gilbert is subject to penalty under IRC § 6694(a) because she willfully prepared tax returns for customers that she knew contained false deductions, losses, credits and expenses. Katherine Gilbert knew that these false deductions, losses, credits and expenses would understate her customers' tax liabilities, and knew there was no substantial authority or reasonable basis for falsely reported items.

132. Gilbert is subject to penalty under IRC § 6694(b) because she knew or should have known that the returns she prepared for customers contained fabricated business income and expenses, false unreimbursed business expenses, charitable contributions, medical and dental expenses, education expenses, false Schedule C expenses, and false Schedule E rental losses, for which she could not have reasonably believed that the position would more likely than not be sustained on the merits. Gilbert fabricated these claims and their supporting documentation. There could be no possibility that fabricated deductions, losses, credits and expenses would be sustained on the merits.

133. Preparing federal tax returns that willfully understate the taxpayer's liability and that contain unrealistic or unreasonable and frivolous positions subjects Gilbert to penalties

under I.R.C. § 6694.

134.  Additionally, Gilbert is subject to penalty under IRC § 6695(a) because she prepared tax returns for customers and then failed to furnish a copy of the tax return to the customer.

135.  Anything less than a permanent and complete bar on the preparation of tax returns is unlikely to stop Gilbert from preparing fraudulent tax returns.  Not only is it Gilbert's pattern to file fraudulent returns, but she has shown flagrant disregard for the internal revenue laws and the IRS's attempts to enforce these laws, since she has continued her fraudulent activities despite receiving notice of IRS investigations into her fraudulent activity.  Gilbert's long record of deceit, fraud and lack of remorse shows there is a high likelihood that she will continue her schemes if she is merely barred from filing improper returns.

**COUNT II: Injunction Under 26 U.S.C. § 7408 for violation of 26 U.S.C. § 6701**

136.  The United States incorporates by reference the allegations contained in paragraphs 1 through 135.

137.  I.R.C. § 7408(a) authorizes a district court to enjoin persons who have engaged in conduct subject to penalty under I.R.C. § 6701.

138.  Section 6701(a) imposes a monetary penalty: (1) on any person who aids, assists, procures, or advises with respect to the preparation or presentation of any portion of a [tax] return, affidavit, claim, or other document ("portion");  (2) when that person knows or has reason to know that such portion will be used in connection with a material matter arising under the internal revenue laws; and (3) that person knows that such portion (if so used) would result in an understatement of the liability for tax of another person.

139.  Section 6701(b)(1) authorizes a monetary penalty in the amount of $1,000 per

return or portion filed which violates Section 6701(a).

140. Gilbert's conduct is subject to penalty under I.R.C. § 6701 because she prepares and files fraudulent tax returns on behalf of customers who obtain unwarranted refunds as a result.

141. As a tax return preparer, Gilbert knew or had reason to know that the tax returns that she prepared would be used as to material matters under federal tax law. Additionally, as a tax return preparer, Gilbert knew that the returns she prepared would result in understatements of customers' tax liability because Gilbert knew that the deductions, losses, credits and expenses on the returns she prepared were overstated or fabricated.

142. Accordingly, Gilbert's conduct in connection with her preparation and filing of false tax returns is subject to penalty under I.R.C. § 6701.

143. The schemes Gilbert uses have caused and continue to cause substantial harm to the United States by fraudulently reducing customers' reported tax liabilities, obtaining fraudulent refunds, and by obstructing the IRS's efforts to administer the federal tax laws.

144. The United States also is harmed because the IRS must continually devote limited resources to detecting and examining inaccurate returns filed by Gilbert, and to attempting to assess and collect unpaid taxes from her customers.

145. An injunction against Gilbert is necessary and appropriate to prevent the recurrence of her conduct, subjecting her to penalty under I.R.C. § 6701, and to prevent her from engaging in any other conduct subject to penalty under the Internal Revenue Code.

**COUNT III:  Injunction Under 26 U.S.C. § 7402(a) for Unlawful Interference with the Enforcement of the Internal Revenue Laws and Appropriateness of Injunctive Relief**

146. The United States incorporates by reference the allegations contained in paragraphs 1 through 145.

26

147.  I.R.C. §7402(a) authorizes a district court to issue orders of injunction as may be necessary or appropriate for the enforcement of the internal revenue laws, even if the United States has other remedies available for enforcing those laws, because IRC § 7402(a) expressly states that its injunction remedy is "in addition to and not exclusive of" other remedies for enforcing the internal revenue laws.

148.  Gilbert's activities described above substantially interfere with the enforcement of the internal revenue laws because her preparation and filing of numerous fraudulent tax returns resulted in customers not paying their true federal tax liabilities and receiving tax refunds to which they were not entitled.

149.  An injunction prohibiting Gilbert from preparing or assisting in the preparation of tax returns is needed to stop her from preparing or filing fraudulent tax returns and to prohibit her from otherwise interfering with the proper administration and enforcement of the internal revenue laws now, and in the future.

150.  Given the continued nature of Gilbert's misconduct despite the IRS investigations described above, unless enjoined by this Court, Gilbert is likely to continue to engage in illegal conduct in the future.

151.  If Gilbert is not enjoined from tax return preparation, the United States will suffer irreparable harm from the underpayment of taxes and the exhaustion of resources to enforce the internal revenue laws.

152.  While the United States will suffer substantial, irreparable injury if Gilbert is not enjoined, Gilbert will not be harmed by being compelled to obey the law.

153.  The public interest would be advanced by enjoining Gilbert because an injunction will stop her illegal conduct and the harm that her conduct is causing the United States Treasury

and the public.

154. An injunction under I.R.C. § 7402 is necessary and appropriate, and the United States is entitled to injunctive relief under I.R.C. § 7402. The injunction, as detailed below, should bar Gilbert, and anyone acting in concert with her, from preparing or filing tax returns for others, representing customers before the IRS, and from otherwise engaging in conduct that interferes with the proper administration of the internal revenue laws.

WHEREFORE, the United States of America prays for the following:

A. That the Court find that Gilbert has continually and repeatedly engaged in conduct subject to penalty under I.R.C. § 6694 and § 6695; that, pursuant to I.R.C. § 7407, an injunction merely prohibiting conduct subject to penalty would be insufficient to prevent Gilbert's interference with the proper administration of the tax laws; and that Gilbert should be permanently enjoined from acting as a tax return preparer;

B. That the Court find that Gilbert has engaged in conduct subject to penalty under I.R.C. § 6701 and that injunctive relief under I.R.C. § 7408 is appropriate to prevent a recurrence of that conduct;

C. That the Court find that Gilbert has interfered with the enforcement of the internal revenue laws and that injunctive relief is appropriate to prevent the recurrence of that conduct pursuant to I.R.C. § 7402(a) under the Court's inherent equity powers;

D. That this Court, pursuant to I.R.C. §§ 7402(a), 7407, and 7408, enter a permanent injunction enjoining Gilbert, individually and doing business as Checks and Balances, Inc., her officers, agents, servants, employees, and attorneys, and anyone in active concert or participation with her or with them, from directly or indirectly:

1. Preparing or assisting in the preparation or filing of federal tax returns,

28

amended returns, and other federal tax documents and forms for anyone other

than herself;

2. Advising, counseling, or instructing anyone about the preparation of a federal

tax return;

3. Owning, managing, controlling, working for, or volunteering for a tax-return

preparation business;

4. Advertising tax return preparation services through any medium, including

print, online, and social media;

5. Maintaining, assigning, holding, using, or obtaining a Preparer Tax

Identification Number (PTIN) or an Electronic Filing Identification Number

(EFIN);

6. Representing any person in connection with any matter before the IRS;

7. Employing any person to work as a federal tax return preparer;

8. Referring any person to a tax preparation firm or a tax return preparer, or

otherwise suggesting that a person use any particular tax preparation firm or

tax return preparer; and

9. Engaging in any conduct that substantially interferes with the administration

and enforcement of the internal revenue laws.

E. That the Court, pursuant to I.R.C. § 7402(a), enter an order requiring Gilbert to

produce to counsel for the United States, within 30 days of the Court's order, a list that identifies

by name, social security number, address, email address, and telephone number and tax period(s)

all persons for whom she or Checks and Balances, Inc. prepared federal tax returns or claims for

a refund, for tax years beginning in 2011 and continuing through this litigation;

F.     That the Court, pursuant to I.R.C. § 7402(a), enter an order requiring Gilbert, within 30 days of receiving the Court's order, to contact by email, if an email address is known, or otherwise by U.S. mail, all persons for whom she or Checks and Balances, Inc., has prepared federal tax returns, amended tax returns, or claims for refund since January 2012, as well as all employees or independent contractors she or Checks and Balances, Inc. has had since January 2012, and to inform them of the permanent injunction entered against her by sending each of them a copy of the order of permanent injunction, with no other text, enclosures, or attachments unless approved in writing by the Department of Justice;

G.     That the Court, pursuant to I.R.C. §§ 7402(a), enter an order requiring Gilbert, within 45 days of receiving the Court's order, to file a declaration, signed under penalty of perjury, confirming that she has received a copy of the Court's order and is in compliance with the terms described in Paragraphs D-F of this Complaint;

H.     That this Court permit the United States to conduct post-judgment discovery to ensure Gilbert's compliance with the permanent injunction;

I.     That this Court retain jurisdiction over Gilbert and over this action to enforce any injunction entered against her; and

J.     That this Court grant the United States such other and further relief as the Court deems appropriate.

Respectfully submitted,

RICHARD E. ZUCKERMAN
Principal Deputy Assistant Attorney General
Tax Division, U.S. Department of Justice

/s/ Mary A. Stallings
MARY A. STALLINGS
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 55

30

Washington, D.C.  20044
202-616-2604 (v) / 202-514-5238 (f)
Mary.A.Stallings@usdoj.gov

ILND 44 (Rev. 07/10/17)

# CIVIL COVER SHEET

The ILND 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(See instructions on next page of this form.)*

## I. (a) PLAINTIFFS

## DEFENDANTS

**(b)** County of Residence of First Listed Plaintiff _____
*(Except in U.S. plaintiff cases)*

County of Residence of First Listed Defendant _____
*(In U.S. plaintiff cases only)*
*Note: In land condemnation cases, use the location of the tract of land involved.*

**(c)** Attorneys *(firm name, address, and telephone number)*

Attorneys *(if known)*

## II. BASIS OF JURISDICTION *(Check **one** box, only.)*

☐ 1  U.S. Government
Plaintiff

☐ 3  Federal Question
*(U.S. Government not a party)*

☐ 2  U.S. Government
Defendant

☐ 4  Diversity
*(Indicate citizenship of parties in Item III.)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(For Diversity Cases Only.)*
*(Check **one** box, only for plaintiff and **one** box for defendant.)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business in This State | 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business in Another State | 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Check **one** box, only.)*

| CONTRACT | TORTS | | PRISONER PETITIONS | LABOR | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 510 Motions to Vacate Sentence | ☐ 710 Fair Labor Standards Act | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | **Habeas Corpus:** | ☐ 720 Labor/Management Relations | ☐ 376 Qui Tam (31 USC 3729 (a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | ☐ 530 General | ☐ 740 Railway Labor Act | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | ☐ 535 Death Penalty | ☐ 751 Family and Medical | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & Slander | Pharmaceutical | ☐ 540 Mandamus & Other | Leave Act | ☐ 430 Banks and Banking |
| & Enforcement of Judgment | ☐ 330 Federal Employers' | Personal Injury | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation | ☐ 450 Commerce |
| ☐ 151 Medicare Act | Liability | Product Liability | ☐ 555 Prison Condition | ☐ 791 Employee Retirement | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury | ☐ 560 Civil Detainee – Conditions | Income Security Act | ☐ 470 Racketeer Influenced and |
| Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | Product Liability | of Confinement | | Corrupt Organizations |
| ☐ 153 Recovery of Veteran's Benefits | ☐ 350 Motor Vehicle | | | | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | **PERSONAL PROPERTY** | | **PROPERTY RIGHTS** | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | Product Liability | ☐ 370 Other Fraud | | ☐ 820 Copyrights | ☐ 850 Securities/Commodities/ |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | ☐ 371 Truth in Lending | | ☐ 830 Patent | Exchange |
| ☐ 196 Franchise | ☐ 362 Personal Injury – | ☐ 380 Other Personal | | ☐ 835 Patent – Abbreviated | ☐ 890 Other Statutory Actions |
| | Medical Malpractice | Property Damage | | New Drug Application | ☐ 891 Agricultural Acts |
| | | ☐ 385 Property Damage | | ☐ 840 Trademark | ☐ 893 Environmental Matters |
| | | Product Liability | | | ☐ 895 Freedom of Information Act |
| | | | | | ☐ 896 Arbitration |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **BANKRUPTCY** | **FORFEITURE/PENALTY** | **SOCIAL SECURITY** | ☐ 899 Administrative Procedure |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | ☐ 422 Appeal 28 USC 158 | ☐ 625 Drug Related Seizure | ☐ 861 HIA (1395ff) | Act/Review or Appeal of |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 423 Withdrawal 28 USC 157 | of Property 21 USC 881 | ☐ 862 Black Lung (923) | Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | | ☐ 690 Other | ☐ 863 DIWC/DIWW (405(g)) | ☐ 950 Constitutionality of |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | | | ☐ 864 SSID Title XVI | State Statutes |
| ☐ 245 Tort Product Liability | Accommodations | **IMMIGRATION** | | ☐ 865 RSI (405(g)) | |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 462 Naturalization Application | | | |
| | Employment | ☐ 463 Habeas Corpus – | | | |
| | ☐ 446 Amer. w/Disabilities - | Alien Detainee | | **FEDERAL TAXES** | |
| | Other | (Prisoner Petition ) | | ☐ 870 Taxes (U.S. Plaintiff | |
| | ☐ 448 Education | ☐ 465 Other Immigrant | | or Defendant) | |
| | | Actions | | ☐ 871 IRS—Third Party | |
| | | | | 26 USC 7609 | |

## V. ORIGIN *(Check **one** box, only.)*

☐ 1  Original
Proceeding

☐ 2  Removed from
State Court

☐ 3  Remanded from
Appellate Court

☐ 4  Reinstated or
Reopened

☐ 5  Transferred from
Another District
*(specify)*

☐ 6  Multidistrict
Litigation

☐ 8  Multidistrict
Litigation
Direct File

## VI. CAUSE OF ACTION (Enter U.S. Civil Statute under which you are filing and write a brief statement of cause.)

## VII. Previous Bankruptcy Matters (For nature of suit 422 and 423, enter the case number and judge for any associated bankruptcy matter previously adjudicated by a judge of this Court. Use a separate attachment if necessary.)

## VIII. REQUESTED IN COMPLAINT:

☐ Check if this is a **class action** under Rule 23, F.R.CV.P.

DEMAND $

Check Yes only if demanded in complaint.
JURY DEMAND:  ☐ Yes  ☐ No

## IX. RELATED CASE(S) IF ANY   *(See instructions)*

Judge

Case Number

## X. Is this a previously dismissed or remanded case? ☐ Yes ☐ No  If yes, Case #

Date _____

Signature of attorney of record _____

Name of Judge _____

Authority for Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.** **(a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; NOTE: federal question actions take precedence over diversity cases.)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerk(s) in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.** **Origin.** Place an "X" in one of the six boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. Do not cite jurisdictional statutes unless diversity. Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

**VII.** **Previous Bankruptcy Matters** For nature of suit 422 and 423 enter the case number and judge for any associated bankruptcy matter previously adjudicated by a judge of this court. Use a separate attachment if necessary.

**VIII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P. Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**IX.** **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**X.** **Refiling Information.** Place an "X" in the Yes box if the case is being refiled or if it is a remanded case, and indicate the case number and name of judge. If this case is not being refiled or has not been remanded, place an "X" in the No box.

**Date and Attorney Signature.** Date and sign the civil cover sheet.